In re SEYMOUR CABINET CO.

GUARANTEE FINANCE & SECURITIES CO. v. VOSS.

(Circuit Court of Appeals, Seventh Circuit. November 6, 1923.)

No. 3288.

Bankruptcy ⊕═140(½)—Transaction with bankrupt held not one of sale.

Appellant, knowing bankrupt to be insolvent, and within four months prior to bankruptcy, contracted to advance money for pay rolls, etc., to complete partially manufactured furniture owned by and in possession of bankrupt, in consideration of an agreement, purporting to be a sale of all the furniture to appellant, on condition that, after advancements were repaid, any surplus was to be returned to bankrupt, and there was no change of possession of any of the furniture. *Held*, that the transaction was not a sale, and appellant was a mere unsecured creditor.

Appeal from the District Court of the United States for the District of Indiana.

In the matter of the Seymour Cabinet Company, bankrupt; C. F. Walter Voss, trustee. The Guarantee Finance & Securities Company appeals from an order of District Court. Affirmed.

W. F. Fox, for appellant.

Oscar B. Abel, of Seymour, Ind., for appellee.

Before BAKER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Seymour Cabinet Company, an Indiana manufacturing company, was adjudged a bankrupt after April 18, 1922, and its trustee filed a petition for an order to sell all its property at public sale, including manufactured and unmanufactured materials, inventoried at $8,502.53. The inventory showed no accounts or bills receivable. Appellant, a finance credit concern of Cincinnati, Ohio, claimed ownership of all that material, under two contracts with bankrupt, and this appeal is to reverse a judgment adverse to appellant on that contention.

The first contract dated December 23, 1921, after reciting facts which clearly show the then insolvency of bankrupt, states that bank-

rupt has two orders to manufacture furniture, one with Sakolsky, of New York, for $16,175, and another with Vandenboom, of Kansas City, for $16,880; that bankrupt has the material required to complete those orders, but that it is necessary to have money for pay rolls and minor incidentals; that bankrupt sells, assigns, and transfers to appellant *"any and all money due"* bankrupt on both the Sakolsky and the Vandenboom contracts, in consideration of appellant's agreement to advance pay rolls and minor incidentals, not, however, exceeding $3,500, such advances to be repaid out of the first money collected on such orders.

The second contract, dated February 25, 1922, shows that all the furniture had been manufactured and delivered under the Vandenboom order, but that not all of the money had been paid thereunder; that Sakolsky had repudiated his contract, but that all of the furniture had been manufactured, sold, and delivered to other parties satisfactory to appellant, and that assignment and transfer to appellant of any financial interest in the invoices covering the same had been made; that, after filling all obligations under those contracts, there remained in bankrupt's plant 200 partially manufactured dining room suites, the completion of which would require additional merchandise and cash for pay roll requirements. The contract reaffirms appellant's knowledge of bankrupt's insolvency, and provides that, in consideration of advancements by appellant of the necessary funds for the purchase of the requisite material and for pay roll needs, bankrupt sells, assigns, and delivers to appellant all of the furniture and material in bankrupt's plant, the furniture, when manufactured, to be shipped to Edward H. Brink for the benefit of appellant, invoices to be assigned, directing payments to Brink, and Brink to first reimburse appellant for pay rolls, purchase of material and all expenses in connection with the contract, together with all other just and proper charges, any balance to be turned over to bankrupt.

All transactions on behalf of appellant were handled through Brink, its attorney, secretary, and treasurer, to whom bankrupt, as early at least as February, 1921, was making assignments of its accounts to secure advances from a concern under a name different from that of appellant, but Brink was its attorney. Brink was a scheduled creditor for $12,000. Appellant claims that, soon after the making of the first contract, it discovered that the bankrupt did not have the material necessary to fill the two orders, and that appellant had to advance money, not only for pay rolls, but also for material, etc. The evidence is not convincing on this point. In any event, it is not claimed that appellant advanced more than $21,489.55, prior to making the second contract on February 25th. Up to that date it had received invoices for the full amount of the two orders in question viz. $33,055, on which it had collected in cash to that date, from Vandenboom $11,573 and from sales, presumably the Sakolsky $9,112.20. After the date of the second contract, appellant advanced $4,756.90. The record shows some $1,300 in materials and supplies purchased in 1922, not paid for. What manufacturing was done after the making of the second contract does not appear, nor does it appear whether anything was sold or whether there were any receipts after that date.

The first contract was not a sale, but was only an agreement by appellant to advance bankrupt $3,500 for pay rolls, etc., to enable bankrupt, by the use of its materials, tools, plant, machinery, and organization, to manufacture merchandise to fill the Vandenboom and Sakolsky orders. To secure to appellant those advancements, bankrupt assigned *"any and all money due"* bankrupt under the two orders, the money so advanced to be repaid out of the first money collected. Appellant seems to be claiming nothing on account of the first contract, and it seems only material here, because the facts reflect upon the good faith of appellant's claim under the second contract. If appellant's representations are true, we must conclude that the moneys advanced by appellant under the first contract covered all materials and all pay rolls necessary to manufacture the furniture to fill the two orders aggregating $33,055. Apparently there was a profit of $12,000 on the two orders, all of which appellant received and still has. In addition thereto, bankrupt had gained in the transaction 200 dining room suites in various stages of completion.

On February 25, 1922, after the two orders had been fully completed, there were 200 partially manufactured dining room suites in bankrupt's factory, which belonged to bankrupt. The record does not show any sales by bankrupt after February 25th. The property claimed by appellant covers all of the merchandise and material that came to the trustee and inventoried at $8,502.53. It is evident that, if all the money advanced by appellant after February 25th had gone into material, and none into pay rolls, only a little more than half of the property claimed could have been purchased with money advanced by appellant.

While the second contract "sold and assigned" 200 dining room suites to appellant, the only consideration for such alleged sale was an agreement by appellant to advance the necessary funds to purchase material and meet pay rolls and complete those suites. There could be no lawful sale of bankrupt's property to appellant while appellant was insolvent, without the payment of a fair consideration therefor; but, solvent or insolvent, the conveyance of 200 dining room suites, upon the sole consideration that appellant, to whom they were conveyed, would complete them, would be simply a gift of the furniture to appellant, and no sale could be presumed from such a transaction. What appellant claims is that it bought the furniture, under the second contract, from bankrupt, and that it employed the bankrupt to complete the manufacture of the furniture as its agent. That theory cannot be accepted, first, because the facts do not show it; and, second, because the taking of money from appellant to complete the manufacture of its own furniture in its own factory, with its own tools and organization, cannot be held to constitute the bankrupt as agent and appellant as principal. The parties made a contract in writing for a loan, at a time when both parties knew bankrupt was insolvent. Under the contract, and under the other evidence in the case, the relation between the parties was that of debtor and unsecured creditor.

The decree of the court below is affirmed.